**Homer Lee SLATTER**

v.

**AETNA FINANCE COMPANY.**

**Civ. A. No. 18279.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 27, 1974.

---

E. Lundy Baety, Hill, Jones & Farrington, Atlanta, Ga., for plaintiff.

J. Norwood Jones, Jr., Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

This is an action brought pursuant to the Truth-in-Lending provisions of the Federal Consumer Credit Protection Act [hereinafter the Act], 15 U.S.C. § 1601 et seq. and the regulations adopted pursuant thereto published at 12 CFR 226 and commonly referred to as "Regulation Z," seeking to recover statutory damages, reasonable attorney's fees and costs. Plaintiff charges defendant with three violations of the Act, to wit: (1) failure to disclose the loan fee as a "prepaid finance charge," (2) inadequate identification of the security listed on the disclosure statement, and (3) inadequate disclosure of insurance purchased in connection with the credit extension. The matter was submitted to a Bankruptcy Judge of this Court, sitting as Special Master where plaintiff filed a motion for summary judgment and a brief in support thereof, and defendant filed no motion or brief in opposition. In his recommendations as Special Master, the Bankruptcy Judge found two violations of the Act: (1) when defendant failed to use the term "prepaid finance charge" in describing the fee imposed pursuant to Ga.Code Ann. § 25–315(b) for the extension of credit, relying on Grubb v. Oliver Enterprises, Inc., 358 F.Supp. 970 (N.D.Ga.1972); and (2) when the cost of insurance purchased in connection with the credit extension was not included in the finance charge since its disclosure was found to be inadequate, relying on Philbeck v. Timmers Chevrolet, Inc., 361 F.Supp. 1255 (N.D. Ga.1973). The Bankruptcy Judge did not rule on the alleged inadequacy of identification of the security listed on the disclosure statement.

In making his first conclusion of law, the special master's reliance on Grubb, supra was misplaced. Ga.Code Ann. § 25–315(b) authorizes lenders to charge a "fee" for making a loan. This section is permissive; it allows the lender the option of receiving or collecting the loan fee "at the time the loan is made" or of merely charging for the loan fee at the time the loan is made and adding it to the principal amount for collection along with the loan payments.[1] In Grubb, the loan fee so allowed was actually withheld from the proceeds of the credit extended by the creditor at the time the loan was made, while in the present case, the loan fee was charged and added to the amount financed to become part of the total payments due which were to be repaid in 24 equal monthly installments. This distinction is critical for the determination of whether the "loan fee" must always be denoted as a "prepaid finance charge."

"Regulation Z" requires certain disclosures from creditors and provides for uniform terminology so as "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit

[1]. This section with respect to the loan fee is different from § 25–315(a) dealing with the treatment of basic interest charges. Section 25–315(a) provides that interest charges on loan contracts of 18 months or less, "may be discounted in advance" but that on contracts repayable over a period greater than 18 months, the "interest shall be added to the principal amount of the loan." (emphasis supplied). Section 25–315(a) is thus compelling as to interest charges repayable over a period greater than 18 months, requiring them to be "added on," while § 25–315(b) is completely permissive as to whether the "loan fee" is added on to the principal or collected at the time of the loan. As far as § 25–315(b) (the loan fee provision) is concerned, whether the period of repayment is greater than or less than 18 months is immaterial.

terms available to him . . . . ." 15 U.S.C. § 1601. In implementing this, 12 CFR §§ 226.8(d) and (e)(1) require that "any finance charge paid separately, in cash or otherwise, directly or indirectly to the creditor . . . or withheld by the creditor from the proceeds of the credit extended" must be disclosed using the term "prepaid finance charge." The question thus becomes one of whether or not the loan fees permitted by Ga.Code Ann. § 25–315(b) are required to be labelled as "prepaid finance charge" within the provisions of those sections.

In the present case, the loan fee and the interest comprise part of the "finance charge."[2] This finance charge is added to the "amount financed" to arrive at the face amount of the note which is synonymous with the "total of payments." The "amount financed" is the amount of credit of which the customer will have the actual use or, in other words, the actual proceeds from the credit extended. Section 226.2(d). It is this "amount financed" upon which the finance charge is imposed.

■ Where the loan fee is "added to" the amount financed to become part of the total of payments, the fee is not "paid separately in cash or otherwise . . . or withheld by the creditor from the proceeds of the credit extended" as required by § 226.8(e)(1) and therefore, does not fall within the definition in § 226.8(d)(2) requiring its disclosure as a "prepaid finance charge." In *Grubb*, the loan fee was actually withheld at the time of the consummation of the loan so it then came within § 226.8(e)(1). In the present case, in contrast to *Grubb*, the "loan fee" was not withheld or separately paid but was added to the amount financed to become part of the total payments due which were to be repaid in 24 equal monthly installments, therefore, it does not come within § 226.8(e)(1).

■ There is no merit in the contention that the loan fee permitted under Ga.Code Ann. § 25–315(b) is constructively "prepaid" because it is paid in total if the loan is prepaid prior to maturity. As this court said in Hamilton v. G. A. C. Finance Corp., Civ. No. 18163 (N.D.Ga. May 22, 1974):

> The court notes that the time of prepayment of the loan prior to the due date is a circumstance *after* the credit is extended which is controlled exclusively by the Borrower. Such possible future contingency of prepayment cannot at the time the loan is made be considered as a finance charge paid separately or withheld from the credit extended as defined by Regulation Z, § 226.8(d)(2).

This court's interpretation of Regulation Z as it pertains to the prepaid finance charge is supported by the Federal Reserve Board's Interpretative ruling of August 23, 1973 (12 CFR § 226.819) which states in part that "[t]he concept of prepaid finance charges was adopted to insure that the 'amount financed' reflected only that credit which the customer had the actual use," and further that "[p]recomputed finance charges which are included in the face amount of the obligation are not the type contemplated by the 'prepaid' finance charge disclosure concept."

The *Grubb* decision in connection with this decision should make it clear that in most instances under the Georgia Industrial Loan Act, Ga.Code Ann. § 25–315, whether the loan fee and/or interest payments fall within the definition of "prepaid finance charges" so as to require disclosure depends on how the lender elects to collect such fee, *i. e.* whether he elects to add it on to the

---

2. The charges for credit life, accident, health, a loss of income insurance may also constitute part of the finance charge in this case if the provisions of § 226.4(a)(5)(i & ii) were not satisfied. *See infra.* The finance charge is defined in 226.2(q) as the "cost of credit determined in accordance with § 226.-4."

amount financed or collect it at the time the loan is consummated.[3] The latter must be disclosed as "prepaid finance charges," the former does not.

In the instant case, there was no violation of the disclosure provisions of Regulation Z with respect to the loan fee and this court reverses the Special Master's ruling on this issue.

■ Plaintiff also contends that there is a violation of § 226.8(b)(5) in that there was an inadequate identification of the property subject to a security interest on the disclosure statement. The security interest was described by checking a box indicating that there was a security agreement on all of the "Household Goods belonging to the borrowers at their address shown above." The Special Master did not rule on this issue so the question to be determined is whether this identification satisfies § 226.8(b) which requires disclosure of the following items:

(b)(5). A description or identification of the type of any security interest held . . . . and a *clear identification of the property to which the security interest relates* . . . . In any such case where a clear identification of such property cannot be properly made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy shall be furnished to the customer by the creditor as promptly as practicable. (emphasis supplied).

Did the disclosure in this case constitute a "clear identification of the property to

which the security interest relates?" The basic purpose behind § 226.8(b)(5) is to give notice to the borrower; to make "a meaningful disclosure," so he can make a comparison of credit terms available to him. 15 U.S.C. § 1601. If the identification on the disclosure is of such a nature that it is sufficient to clearly notify the borrower of the identification of the property covered by the security interest, then the requirement of this section is satisfied. This court is of the opinion that "all Household Goods belonging to the borrower located at their address" sufficiently notifies the borrower of the property that is subject to the security interest. Conyers v. Dixie Furniture, Civ. No. 15779 (N.D.Ga. March 28, 1973), relied on by plaintiff, is not in conflict with this view. In *Conyers*, there existed a contract which provided that a security interest was retained not only in the property purchased under that contract but also in all property purchased under any previous or subsequent contracts with the creditor. A dining room suite had been purchased under a previous contract so it came under the latter contract's clause retaining a security interest. There was no identification of the dining room suite in the latter contract at all; nothing to tell the borrower the type of property covered or its location. In the present case, the type of property (household goods) is identified as well as its location (at the address of borrowers). *Conyers* is thus distinguishable as there was insufficient notice to the borrower of the property covered by the security interest. The notice in the present case was sufficient.

Finally, it is contended by plaintiff that there was inadequate disclosure of insurance purchased in connection with

3. The lender has the option with respect to how the loan fee is collected. The lender also has the option, with respect to how the basic interest is collected on loans repayable in 18 months or less but the lender *must* add on the interest for loans repayable over a period in excess of 18 months. In this latter instance the basic interest fee will never be required to be denoted as "prepaid finance charge" while in the two former instances, it will depend on how the lender collects the loan fee and/or basic interest. *See* note 1, *supra, see also* Ga.Code Ann. § 25–315(a) & (b).

the credit extension in accordance with § 226.4(a)(5)(i & ii). That section requires insurance costs to be included in the finance charge *unless*

> (5)(i) the insurance coverage is not required by the creditor and this fact is conspicuously disclosed in writing to the customer; and (ii) any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

In contending that the present disclosure of insurance was inadequate, plaintiff relies on Philbeck v. Timmers Chevrolet, Inc., 361 F.Supp. 1255 (N.D.Ga. 1973) which held that when the credit insurance is not required under (5)(i) above, then to satisfy the requirement of disclosure of the "cost" of the insurance under (5)(ii) above, that disclosure must also include a statement of the type and term of the insurance. *Philbeck* recognized that the express wording of § 226.4(a)(5)(ii) seemed only to require a disclosure of the "cost" without including the "type and term" of the insurance but felt constrained to follow the Federal Reserve Board's interpretative ruling, 12 CFR § 226.402, which required such additional disclosures to satisfy the "cost" disclosure requirement. The *Philbeck* decision has been appealed to the United States Court of Appeals, Fifth Circuit. That case has been argued and is awaiting decision. This Court will not rule on this issue but will stay such a determination pending the decision of the Fifth Circuit in the *Philbeck* case.

In view of this Court's finding that there was no violation of the Act relative to the "loan fee" not being denoted as a "prepaid finance charge" and to the identification of the property subject to the security interest; and since no ruling will be made as to the insurance disclosure until *Philbeck* is decided by the Fifth Circuit, this Court needs make no ruling as to the Special Master's finding of reasonable attorney's fees.

The final decision of this case is hereby stayed pending a decision of the United States Court of Appeals, Fifth Circuit in Philbeck v. Timmers Chevrolet, Inc.