(638 P.2d 372)
No. 52,741

UNITED MISSOURI BANK OF KANSAS CITY, *Plaintiff-Appellee,* v. CHERYL R. ROBINSON, *Defendant-Appellant.*

Opinion filed December 23, 1981.

*J. McFadden,* of Wyandotte-Leavenworth County Legal Aid Society, Inc., for the appellant.

*Richard L. Reid,* of Kansas City, for the appellee.

Before JUSTICE FROMME, presiding, PARKS, J., and B. MACK BRYANT, District Judge Retired, assigned.

PARKS, J.: This is an appeal by the defendant Cheryl R. Robinson from a judgment of the district court holding that her counterclaim for damages arising out of plaintiff's alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (1976), was barred by the statute of limitations.

In May 1978, defendant executed a security agreement and installment note for the purchase of a 1975 automobile. The note and security agreement were subsequently assigned to the plaintiff, United Missouri Bank of Kansas City. After defendant defaulted on the payments and the proceeds of the repossession sale were applied to the balance due on the note, this suit was brought to recover a deficiency judgment of $1,856.76. Defendant raised two technical defenses and counterclaims in avoidance of plaintiff's action. The first defense was that the installment note signed by the defendant and purchased by the plaintiff was negotiable and therefore in violation of K.S.A. 16a-3-307. The trial court held that the note was not negotiable and this point is not disputed on appeal. The second defense alleged a violation of the federal Truth in Lending Act and asserted a claim for damages based on that Act. Because the loan agreement was entered into on May 15, 1978, and the counterclaim was not filed until April 2, 1980, the trial court held that the counterclaim was barred by the one year statute of limitations mandated by 15 U.S.C. § 1640(e).

The Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* was intended to aid consumers in making informed decisions concerning the extension of credit by requiring use of a uniform vocabulary and disclosure of the costs of credit. 15 U.S.C. § 1601. In order to compel disclosure, Congress created a cause of action for consumers who did not receive the proper disclosures, which included civil penalties (15 U.S.C. § 1640 [a][2][A]) and provisions for attorney fees. 15 U.S.C. § 1640 (a)(3). The Act is remedial in nature and must be liberally construed in favor of the consumer in order to effectuate the underlying congressional purpose. *Ed Marling Stores, Inc. v. Miracle,* 6 Kan. App. 2d 175, Syl. ¶ 1, 627 P.2d 352 (1981). However, the actions of aggrieved consumers are limited by the following two provisions:

15 U.S.C. § 1640(e) provides:

"Any action under this section may be brought in any United States district court,

or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

15 U.S.C. § 1640(h) provides:

"A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) of this section against any amount owing to such creditor by such person, unless the amount of the creditor's liability to such person has been determined by judgment of a court of competent jurisdiction in an action to which such person was a party."

The district court interpreted these two provisions and held that defendant's counterclaim was barred by each section.

I.   Choice of Law

Before reviewing the substance of this holding, we must consider whether state or federal law governs our determination of the issues. The Truth in Lending Act permits any court of competent jurisdiction to entertain an action to enforce its provisions. 15 U.S.C. § 1640(e). Additionally, the entire federal Act is incorporated by reference in Kansas law (K.S.A. 16a-3-206) and independent remedies are available in the state cause of action. K.S.A. 16a-5-203(1). However, no action may be maintained for the same violation pursuant to both the federal Act and the Kansas incorporation of that Act. K.S.A. 16a-5-203(7). Thus, an aggrieved debtor must choose to pursue his claim in our courts in an action premised on either the Kansas Consumer Credit Code (K.S.A. 16a-1-101 *et seq.*) or the federal cause of action created by the Truth in Lending Act. In this case, defendant chose in stating her counterclaim, to seek the remedies of the federal Act. We, therefore, must decide what law should govern the resolution of a federally-created cause of action raised as a defense in state court.

The Truth in Lending Act creates a federal right against lenders which may be litigated in state court. Moreover, state courts are required to enforce federal law under the supremacy clause of Article VI of the United States Constitution. *Testa v. Katt,* 330 U.S. 386, 91 L.Ed. 967, 67 S.Ct. 810 (1947).

In *Dice v. Akron, C. & Y. R. Co.,* 342 U.S. 359, 361, 96 L.Ed. 398, 72 S.Ct. 312 (1952), suit was instituted in state court on the basis of the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (1946). The Supreme Court held that the validity of the employer's defense raised a federal question to be determined by federal rather than state law. The court was specifically concerned that only if federal law controlled could the Act be given the uniform application necessary to effectuate its purpose

throughout the country. See also *Clearfield Trust Co. v. U. S.,* 318 U.S. 363, 87 L.Ed. 838, 63 S.Ct. 573 (1943).

The federal rights created by the Truth in Lending Act require similar protection from local bias if its goal of compelling uniform disclosure of credit terms is to be carried out. *Household Consumer Disc. v. Vespaziani,* 490 Pa. 209, 215, 415 A.2d 689 (1980). Additionally, there appears to be no reason to alter this conclusion when the federal right is asserted defensively. *Household Consumer Disc.,* 490 Pa. at 216. We therefore conclude that the viability of defendant's counterclaim must depend on our interpretation of the federal law.

II.  Effect of § 1640(e)

Defendant acknowledges that the one year statute of limitations of § 1640(e) would bar an affirmative action for damages because more than one year has elapsed since the alleged violations occurred. However, she contends that a counterclaim raising truth in lending violations in defense should not be time barred because (1) the counterclaim is in the nature of a recoupment which under common law is unaffected by the statute of limitations, and (2) the policies underlying the Act would not permit such a limitation.

"Recoupment is the right of a defendant, in the same action, to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he sues or *because he has violated some duty which the law imposes on him in the making or performance of that contract.* It means a deduction from a money claim whereby cross demands arising out of the same transaction are allowed to compensate one another, the balance only to be recovered." 20 Am. Jur. 2d, Counterclaim, Recoupment and Setoff § 1, p. 228. (Emphasis added.)

The classification of a defense as recoupment rather than setoff turns on whether the claim arises from the "same transaction" as the plaintiff's cause of action. *Pennsylvania R. Co. v. Miller,* 124 F.2d 160, 162 (5th Cir.), *cert. denied* 316 U.S. 676 (1942). Federal common law has long acknowledged that a defense which is termed a recoupment is never barred by a statute of limitations so long as the main action itself is timely. *Bull v. United States,* 295 U.S. 247, 79 L.Ed. 1421, 55 S.Ct. 695 (1935).

The decisions of the Supreme Court discussing the doctrine of recoupment have been confined to the area of tax liability. See *e.g., Rothensies v. Electric Battery Co.,* 329 U.S. 296, 299, 91 L.Ed. 296, 67 S.Ct. 271 (1946). However, the courts which have

considered whether a truth in lending claim is in the nature of a recoupment are split on the question. See generally, Annot., 36 A.L.R. Fed. 657 (1978). Many of the state court opinions have relied on local law regarding the doctrine of recoupment and are not authority for interpreting the federal statute. See cases cited in *Nat'l Blvd. Bk. of Chicago v. Thompson*, 85 Ill. App. 3d 1145, 407 N.E.2d 739 (1980).

There are few federal decisions on point. In *Ballew v. Associates Financial Services Company of Nebraska, Inc.*, [1974-1980 Transfer Binder] Cons. Cred. Guide (CCH) ¶ 98, 327 (D.C. Neb. Aug. 18, 1976), the Nebraska district court reached the following conclusion:

". . . A Truth in Lending Act claim, although it may involve certain additional facts or a different perception thereof, nevertheless involves the same transaction; that transaction resulted in the note upon which the defendant now seeks recovery. It is from that same document that the plaintiff's counterclaim for the Truth in Lending Act violation emerges."

*Plant v. Blazer Financial Services, Inc. of Ga.*, 598 F.2d 1357 (5th Cir. 1979), considered the reverse side of the issue raised here when it determined that a *creditor's* counterclaim of default in a truth in lending action was of the same transaction so as to be compulsory rather than permissive. The court concluded that the plaintiff's and defendant's claims arose from "a single aggregate of operative facts, the loan transaction . . . ." *Plant*, 598 F.2d at 1361. The only contrary federal authority, *Basham v. Finance America Corp.*, 583 F.2d 918, 927-28 (7th Cir. 1978), cert. denied, sub nom. *First National Bank of Peoria v. Childs*, 444 U.S. 825 (1979), focused on the type of relief sought by the defendant rather than the identity of the parties' claims in the same transaction.

Turning to the case before us, the district court held that the debt owed the lender was unaffected by the claimed violations of the Truth in Lending Act and that therefore the two actions were not of the same transaction. However, both the obligation of the debt and the alleged violations of federal law arose out of the same loan transaction. The note and security agreement not only represented the defendant's indebtedness, they also evidenced plaintiff's compliance with the requirements of federal law. A defense need not be of the same form or controlled by the same body of law as the plaintiff's claim to be a recoupment. Comment,

*Truth in Lending and the Statute of Limitations,* 21 Vill. L. Rev. 904, 916 (1975-76).

The broad remedial purpose of the Act additionally persuades us that defendant's counterclaim should not be barred by § 1640(e). It is the goal of the Act to facilitate responsible and intelligent indebtedness through the disclosure of credit terms. Without knowledge of the costs of credit, a debtor may be unaware of the actual debt he is incurring. Moreover, it is unlikely a debtor will discover the improper disclosure until some action by the creditor compels him to seek legal assistance. Finally, it would certainly circumvent the Act and the policy of prompt vindication of contractual rights if a creditor could simply sit on his claim for a year until the truth in lending statute of limitations runs to avoid compliance with the Act.

We conclude that the truth in lending counterclaim is in the nature of a recoupment and should not be barred by the statute of limitations. Accord, *Household Consumer Disc.,* 490 Pa. at 215-16; *Nat'l Blvd. Bk.,* 85 Ill. App. 3d at 1149; *Easy Living v. Whitehead,* 65 Ohio App. 2d 206, 417 N.E.2d 591, 596 (1979); *Pacific Concrete Federal Credit U. v. Kauanoe,* 62 Hawaii 334, 614 P.2d 936, 940 (1980); *Tuloka Affiliates, Inc. v. Moore,* 275 S.C. 199, 203, 268 S.E.2d 293 (1980); *Brown v. U.S. Life Credit Corp.,* 602 S.W.2d 94, 96 (Tex. Civ. App. 1980); *Household Finance Corp. v. Hobbs,* 387 A.2d 198, 200 (Del. Super. Ct. 1978).

III.   Section 1640(h)

The district court also concluded that § 1640(h) operated as an independent bar to defendant's claim. Relying on *Enterprises, Inc. v. Neal,* 29 N.C. App. 78, 223 S.E.2d 831 (1976), the district court interpreted this section as precluding a truth in lending counterclaim since the creditor's liability had not been judicially determined in an earlier proceeding. Defendant contends that this holding is erroneous and that the purpose of § 1640(h) is to prevent the borrower from simply deducting the statutory penalty from his monthly payments without a judicial determination of liability because he believes the lender violated the Act.

The language of the provision is by no means clear; however, the Act must be liberally construed to effectuate its remedial purpose. *Ed Marling Stores, Inc.,* 6 Kan. App. 2d at 181. The holding of the district court would effectively bar any defensive use of the Act and would, thus, severely curtail the ability of

consumers to enforce its provisions. Additionally, the trial court's interpretation would require multiple adjudications for claims arising out of the same loan transaction between the same parties contrary to the liberal joinder policy reflected in modern rules of civil procedure. See Fed. R. Civ. P. 13. The interpretation urged by defendant has been adopted by the majority of courts construing the section (see, *e.g., Nat'l Blvd. Bk.*, 85 Ill. App. 3d at 1147; *Akron National Bank & Trust Co. v. Roundtree*, 60 Ohio App. 2d 13, 395 N.E.2d 525 [1978]; *Stephens v. Household Finance Corp.*, 566 P.2d 1163 [Okla. 1977]) and is also supported in its legislative history. Senate Comm. on Banking, Housing and Urban Affairs, Truth in Lending Act Amendments, S. Rep. No. 278, 93rd Cong., 1st Sess. 16 (1973). See also, Comment, *Truth in Lending and the Statute of Limitations,* 21 Vill. L. Rev. 904, 925 (1975-76). We concur with the holding of these courts and conclude that § 1640(h) requires a consumer to litigate an alleged truth in lending violation but that it does not bar assertion of the claim as a defense or counterclaim in an action on the debt.

Finally, while it can have no bearing on this case, we note that effective April 1, 1982, both section 1640(e) and section 1640(h) will be amended to avoid the questions raised in this appeal. The new provisions shall include the following language:

§ 1640(e)

"This subsection does not bar a person from asserting a violation of this title in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law."

§ 1640(h) shall read:

"A person may not take any action to offset any amount for which a creditor or assignee is potentially liable to such person under subsection (a)(2) against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this title has been determined by judgment of a court of competent jurisdiction in an action to which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this title as an original action, or as a defense or counterclaim to an action to collect amounts owed by the consumer brought by a person liable under this title." Truth in Lending Simplification and Reform Act of 1980, Pub. L. No. 96-221, Title VI § 615, 94 Stat. 180.

As a final note, we consider defendant's motion for attorney fees generated by this appeal. This motion is granted and plaintiff is hereby ordered to pay $750 in attorney fees.

Judgment is reversed and the case is remanded for the purpose of deciding the issues raised by the counterclaim.